IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BARRY R. GAINSBURG** | * |
| | * |
| Plaintiff, | * |
| | *   Civ. No.:   PJM 10-715 |
| v. | * |
| | * |
| **STEBEN & CO., INC.** | * |
| | * |
| Defendant. | * |

## MEMORANDUM OPINION

Barry R. Gainsburg has sued his former employer, Steben & Co., Inc. ("SCI"), and its President, Kenneth Steben, claiming abusive discharge, unpaid wages, fraud in the inducement, breach of contract, and defamation. Gainsburg filed his initial Complaint on March 23, 2010, and a First Amended Complaint on May 13, 2010 (collectively, the "Prior Complaints"). On July 22, 2010, following a hearing, the Court issued an oral opinion granting Defendants' Motion to Dismiss all counts other than those for breach of contract and defamation. On August 15, 2011, the Court heard argument on the parties' Cross-Motions for Summary Judgment. At the conclusion of the hearing, the Court issued an oral opinion denying Plaintiff's Motion for Partial Summary Judgment and granting Defendants' Motion for Summary Judgment as to Kenneth Steben on all counts and as to SCI on the counts for breach of contract and defamation, with the exception of a single purportedly defamatory statement. The Court granted Gainsburg 20 days' leave to file an Amended Complaint against SCI for the single statement that survived summary judgment.

On August 31, 2011, Gainsburg filed a Second Amended Complaint articulating a single count of defamation based on Kenneth Steben's alleged statement that Gainsburg was an

-1-

"extortionist" or was committing the offense of "extortion" (the "extortionist statement"). SCI filed a Motion to Dismiss the Second Amended Complaint as barred by the applicable statute of limitations. For the reasons that follow, SCI's Motion to Dismiss will be **GRANTED**.

**I.**

Gainsburg, an attorney, worked for SCI from November 26, 2007 through November 20, 2009 in the dual roles of Chief Compliance Officer and General Counsel. From the outset of his employment, Gainsburg had a contentious relationship with Kenneth Steben, SCI's President. (Second Amended Complaint ("SAC") ¶ 7.) Per the Second Amended Complaint, Steben criticized Gainsburg's work on a routine basis without appreciating the relevant circumstances, ignored Gainsburg's emails and telephone calls, and second-guessed or complained about decisional processes, even if they reflected Steben's own input. (SAC ¶¶ 14-15.)

On June 19, 2009, Gainsburg emailed Steben a copy of an audit report for SCI's Chicago branch office, which included a description of certain "deficiencies found." On June 22, 2009, Steben responded to Gainsburg's email and questioned why Gainsburg had not resolved the noted deficiencies himself or had not raised them with senior management. Gainsburg responded that he had in fact raised these issues with senior management and the finance department, but that they had failed to provide him with the information necessary to rectify the deficiencies. Gainsburg attached an earlier memorandum on this issue to his email. (SAC ¶ 16.)

Later that same day, Steben sent an email to SCI Vice President Michael Bulley, in which he referred to Gainsburg as a "wild card" who was "not competent" and "not to be trusted." Steben noted that Gainsburg has a "grudge against" him—Steben—but concluded that

he—Steben—"need[s] to bite the bullet" and is "leaning towards firing and creating a vacuum." Bulley responded: "I'm not going to talk you out of it. However I don't think we're going to get away with simply letting him go. This last issue in Chicago suggests he's building his arsenal of issues, in the event he is let go." (SAC ¶ 17.)

The next day, Gainsburg allegedly approached Bully to discuss his deteriorating relationship with Steben. Bully allegedly informed Gainsburg that management, particularly Steben, viewed Gainsburg's habit of reducing conversations to writing as an attempt to "extort" the company. (SAC ¶ 18.) Upon hearing this, Gainsburg forwarded to Bulley his email correspondence with Steben regarding the Chicago branch office audit and noted: "from my intent and perspective in no way was it a CYA or an attempt to extort anything in any manner." (SAC ¶ 19.)

SCI terminated Gainsburg's employment on November 20, 2009. This suit followed.

## II.

A motion to dismiss filed pursuant to Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive such a motion, the complaint must show "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007); *see also Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009). Accordingly, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In making its determination, the Court must consider all well-pled allegations in the Complaint as true and construe all factual allegations in a light most favorable to the plaintiff. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). The Court need not, however, accept conclusory factual allegations devoid

of any reference to actual events. *See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) does not generally permit an analysis of the defendant's potential defenses. However, dismissal may be appropriate when a meritorious affirmative defense is clear from the face of the complaint. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (*citing Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 352 (1990) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate)).

### III.

SCI asserts that the Second Amended Complaint is barred by Maryland's one-year statute of limitations for defamation because the sole count is based on a statement made on June 22, 2009—more than one year before the filing of this claim. Gainsburg maintains that his claim is not barred by the statute of limitations because: (1) pursuant to Federal Rule of Civil Procedure 15(c), the claim "relates back" to his Prior Complaints, both of which were filed within one year of the defamatory statement; and (2) SCI waived any statute of limitations defense by appearing generally and arguing the merits of the claim on summary judgment.

### A.

Maryland law imposes a one year limitations period for defamation actions. MD. CODE ANN., CTS. & JUD. PROC. § 5-105. Although, ordinarily, the limitations period runs from the time that the defamatory statement is published, Maryland law follows the discovery rule, which provides that a cause of action accrues at the time the plaintiff "knows or reasonably

-4-

should know of the wrong." *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008) (*quoting Hecht v. Resolution Trust Corp.*, 333 Md. 324, 334, 635 A.2d 394 (1994)).

According to the allegations in the Second Amended Complaint, Gainsburg learned of the extortionist statement on June 23, 2009. Thus, his claim based on this statement, filed on August 31, 2011, is barred by the statute of limitations, unless it is subject to some exception.

**B.**

Gainsburg argues that his claim is not barred by the statute of limitations because it "relates back" to his Prior Complaints under Rule 15(c) of the Federal Rules of Civil Procedure. The Court disagrees.

Rule 15(c) provides that an amendment to a pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." This provision allows a claim that would otherwise be barred by the statute of limitations to go forward. *See Tischler v. Baltimore Bancorp*, 801 F. Supp. 1493, 1497 (D. Md. 1992) ("The purpose of Rule 15(c) is to provide the opportunity for a claim to be tried on its merits, rather than being dismissed on procedural technicalities, when the policy behind the statute of limitations has been addressed."). The Fourth Circuit has identified two requirements for a claim to relate back under Rule 15(c): (1) there must be a "factual nexus between the amendment and the original complaint," and (2) the defendant must have "notice of the claim" and must "not be prejudiced by the amendment." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983); *see also Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 630 (D. Md. 2011).

Gainsburg proffers a two-pronged explanation of why his claim relates back to prior pleadings. First, he argues that the claim generally arises out of the same operative facts alleged in his Prior Complaints, namely that Steben and SCI made false statements about him for the purpose of bringing him into disrepute. Second, he argues that the extortionist statement arose out of a transaction described in his Prior Complaints, as follows:

> On several occasions, Defendant Steben was highly complimentary of Mr. Gainsburg's work and – in particular – of correcting apparent SCI regulatory compliance deficiencies. . . . On other occasions Defendant Steben resisted taking required corrective action: at certain times, he would instigate contentious email exchanges and personal conversations with Mr. Gainsburg, expressing reluctance or opposition to implement required remedial measures. Mr. Gainsburg, at all relevant times, urged compliance with statutory and regulatory mandates. See, Plaintiff's Exhibits "B," and "B-1," which are . . . incorporated by reference herein as though set forth in full.

(Prior Complaints ¶¶ 17-18; SAC ¶¶ 9-10.) Exhibit B-1 contains the email correspondence between Gainsburg and Steben concerning the deficiencies in SCI's Chicago branch office audit, as described in the Second Amended Complaint. Gainsburg submits that the claim of defamation based on the extortionist statement relates back to his Prior Complaints because the email incorporated as Exhibit B-1 constitutes the transactional genesis of the defamation, as evidenced by (1) Steben and Bulley's subsequent email correspondence referencing "the last issue in Chicago" (SAC ¶ 17) and (2) the fact that Gainsburg forwarded the email at Exhibit B-1 to Bulley with a cover message stating that it was not an "attempt to extort anything" (SAC ¶ 19). Finally, Gainsburg notes that because SCI argued at summary judgment that the extortionist statement was not defamatory, it clearly is not "surprised" by this claim.

The Court disagrees with Gainsburg's portrayal of the pleadings. His Prior Complaints were about wrongful termination. The factual allegations and enumerated counts

focused primarily on the conditions of Gainsburg's employment and the circumstances surrounding his termination. In connection with those allegations, Gainsburg included one count of defamation to the effect that Steben falsely stated that Gainsburg had made professional errors, even though Steben knew that Gainsburg was not responsible for the subject materials.[1] The Prior Complaints in no way describe or even allude to Steben's statement that Gainsburg was an "extortionist" or was committing the offense of "extortion." Nor do they include a description of the generic tension surrounding the Chicago branch office audit email exchange, upon which Gainsburg relies for his Rule 15(c) argument.

Although the material facts surrounding the extortionist statement itself do not appear in the Prior Complaints, both sets of pleadings stem from and rely on Gainsburg's contentious employment relationship with Steben and SCI and contain overlapping factual allegations. Accordingly, the Court is inclined to find that there is a factual nexus between the Prior Complaints and the Second Amended Complaint, in satisfaction of the first prong under *Grattan v. Burnett*. 710 F.2d at 163. That said, the Court cannot find that the Prior Complaints fairly put SCI on notice that Gainsburg was alleging a claim based on the extortionist statement, as required by the second prong under *Grattan v. Burnett*. *Id.*

Every alleged defamatory statement constitutes "a separate instance of defamation," which "a plaintiff must specifically allege." *English Boiler & Tube Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (table), 1999 WL 89125, at *3 (4th Cir. 1999); *see also* Wright, Miller, Kane, Federal Practice & Procedure, § 1497 & n.6 (2011). Gainsburg's prior claim of defamation was based on statements that Steben allegedly made in February 2009 to SCI's management, accusing Gainsburg of making professional errors. His current claim of

---

[1] Although the Prior Complaints do not allege precisely when Steben made these defamatory statements, it appears from context that it was in February 2009.

defamation is based on a statement that Steben allegedly made on June 22, 2009 to Bulley accusing Gainsburg of being an "extortionist" or committing "extortion." The claim of defamation in the Prior Complaints is clearly distinct from and could not have provided notice of a claim of defamation based on the extortionist statement. *See English Boiler & Tube*, 1999 WL 89125, at *3 ("Because English did not plead this separate act of defamation in its original complaint, Rouse and B&W had insufficient notice of the claim."); *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) ("While the content of the defamatory statement in the proposed amended complaint is the same as the content of the statements in the original complaint, the new claim names a new party as well as new dates. Allowing these claims to relate back would, in effect, allow the plaintiff to circumvent the statute of limitations, a result proscribed by Fed. R. Civ. P. 15(c).") (omitting citations).

Gainsburg cannot escape the fact that the extortionist statement is a separate instance of defamation by simply alleging that it was part of a pattern of false statements made for the purpose of bringing Gainsburg into disrepute. In rejecting a similar argument, the Fourth Circuit has clearly held that a "plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *English Boiler & Tube*, 1999 WL 89125, at *3.

Further, Gainsburg's argument that the email exchange between Steben and Gainsburg regarding the Chicago branch office audit—incorporated into the Prior Complaints— is the "transactional genesis" of the currently pending defamation claim strains credulity. It is clear from the face of the Prior Complaints that the email served as an example of a "contentious email exchange" and Steben's "reluctance or opposition to implement required remedial measures" for the purposes of providing factual background. (Prior Complaints ¶ 18.) The

tensions surrounding the Chicago branch office audit email exchange did not form the basis for any cause of action in the Prior Complaints, let alone, one for defamation. While Gainsburg argues that Steben made the extortionist statement in connection with and as a result of this email exchange, the fact remains that the Prior Complaints lack any mention of the extortionist statement itself. That Gainsburg later forwarded his email exchange with Steben to Bulley with a cover note using the term "extort" does not alter this analysis. Gainsburg did not incorporate his cover note in the Prior Complaints and cannot argue here that the underlying email put SCI on notice of this claim.

Finally, Gainsburg's argument that SCI was not surprised by the extortionist statement at summary judgment does not advance his cause.[2] To the extent this argument attempts to establish notice, it fails because SCI only learned that Gainsburg was making a claim based on the extortionist statement *after the limitations period had expired*. "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984); *see also Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) ("The linchpin is notice, and notice within the limitations period."), *superseded by rule on other grounds*. Here, Gainsburg did not raise the extortionist statement until he submitted his Answers to Interrogatories on January 27, 2011—seven months *after* the

---

[2] Gainsburg focuses on the fact that the Court noted that Defendant was "not surprised" at the Summary Judgment hearing and granted Plaintiff leave to file the Second Amended Complaint. This does not affect the outcome. "A proffered amendment to a complaint should not be denied on the ground that it introduces a new cause of action which, but for Rule 15(c), F. R. Civ. P., would be barred by limitations. The proper practice is to allow an amendment to be made, if otherwise proper, and leave the question of relation back for consideration after defendant pleads the defense of limitations." *Ross v. Philip Morris Co.*, 164 F. Supp. 683, 686 (W.D. Mo. 1958) (*citing Copeland Motor Co. v. General Motors Corp*, 199 F.2d 566 (5th Cir. 1952).

limitations period had expired. In fact, he asserts in his brief that it was SCI's document production received on January 5, 2011 that triggered his memory of the extortionist statement. If Gainsburg himself did not recall the offending statement until after the limitations period had expired, he cannot plausibly argue that SCI had timely notice that he was bringing a claim based on the statement. To the extent Gainsburg attempts to establish that the Second Amended Complaint does not prejudice SCI, it misconstrues the prejudice requirement. Lack of prejudice is a necessary element for finding that an amendment relates back under Rule 15(c). *See Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983).

The Court finds that Gainsburg's claim for defamation based on the extortionist statement does not relate back to his Prior Complaints under Rule 15(c) and thus is barred by the statute of limitations.

## C.

As for Gainsburg's argument that SCI waived any statute of limitations defense by appearing generally and arguing the merits of the claim on summary judgment, again, the Court disagrees.

A defendant waives his right to assert an affirmative defense, such as the statute of limitations, if he fails to raise it in the responsive pleading *and* plaintiff demonstrates that allowing the defense would cause prejudice and unfair surprise. *See Grunley Walsh U.S., LLC v. Raap*, 386 Fed. App'x 455, 459 (4th Cir. 2010); Fed. R. Civ. P. 8(c). SCI timely raised its statute of limitations defense in accordance with Rule 8(c) by including it in a motion to dismiss under Rule 12(b). Fed. R. Civ. P. 12(b). SCI could not have raised the defense earlier because

Gainsburg had not yet amended the pleadings to include the time-barred claim. Thus, SCI has not waived the statute of limitations defense.[3]

## IV.

For the foregoing reasons, Steben & Co., Inc.'s Motion to Dismiss the Second Amended Complaint [Docket No. 82] is **GRANTED WITH PREJUDICE**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**December 8, 2011**

---

[3] *Id.*